USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-1-16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DANIEL REYES,

                    Plaintiff,

          - against -

CAROLYN COLVIN,
**Acting Commissioner of Social Security,**

                  Defendant.

**REPORT AND**
**RECOMMENDATION**

**15-CV-4208 (WHP) (RLE)**

**To the HONORABLE WILLIAM H. PAULEY III, U.S.D.J.:**

*Pro Se* Plaintiff Daniel Reyes ("Reyes") commenced this action under the Social Security

Act (the "Act"), 42 U.S.C. § 405(g) and/or 42 U.S.C. § 1383(c)(3), challenging a final decision

of the Commissioner of Social Security (the "Commissioner") denying his claim for disability

benefits. Reyes asks the Court to modify the decision of the Commissioner and grant his

monthly maximum insurance and/or Supplemental Security Income ("SSI") benefits, retroactive

to the date of the initial disability. In the alternative, he asks the Court to remand the case for

reconsideration of the evidence, and for such other relief as may be just and proper. (Pl. Compl.)

Reyes alleges that he is entitled to receive disability insurance benefits and/or Supplemental

Insurance Income because he suffers from bipolar disorder and post-traumatic stress disorder

("PTSD"), has back pain because of a slipped disc, and has a mass on the bottom of his right

testicle. (*Id.*) He argues that the decision of the Administrative Law Judge ("ALJ") was

erroneous, not supported by substantial evidence in the record, and/or contrary to the law. (*Id.*)

On January 11, 2016, the Commissioner moved for a judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure, asking the Court to affirm the

Commissioner's decision. To date, Reyes has not filed any opposition or cross-motion for judgment on the pleadings. (*See* Doc. No. 20.)

For the reasons that follow, I recommend that the Commissioner's motion be **DENIED**, and that the case be **REMANDED** for further consideration and development of the administrative record.

## II.    BACKGROUND

### A.    Procedural History

Reyes applied for Supplemental Security Income ("SSI") benefits on July 19, 2011. (Transcript of Administrative Proceedings (Tr.") at 144.) The SSI benefits were denied on November 8, 2011. (*Id.* at 10.) Reyes filed a request for a hearing in December 2011 before Administrative Law Judge Seth I. Grossman (the "ALJ" or "ALJ Grossman"). (*Id.*) Reyes appeared before ALJ Grossman unrepresented at a hearing held on September 14, 2012. (*Id.* at 26.) The ALJ adjourned that hearing in order to allow Reyes to obtain counsel and scheduled a second hearing. (*Id.* at 28-29.) On May, 10, 2013, Reyes appeared before ALJ Grossman with counsel at the second hearing. (*Id.* at 36.) On March 13, 2014, ALJ Grossman denied Reyes's disability claim. (*Id.* at 7.)

Reyes requested review by the Appeals Council on April 2, 2014. (*Id.* at 6.) The Appeals Council denied his request for review on April 24, 2014, making the ALJ's decision the final decision of the Commissioner subject to judicial review pursuant to 42 U.S.C. § 405(g) and/or §1383(c)(3). (*Id.* at 1.) He filed his Complaint on May 22, 2015. (Pl. Compl.)

**B.      The ALJ Hearings, Evidence and Decision**

## 1.      Reyes's Subjective Symptoms

Reyes was born August 14, 1961, and is currently fifty-four years old.  (Tr. at 165.)  He attended high school up to the tenth grade, and can speak and understand English.  (*Id.* at 44, 166.)  He most recently worked as a porter at Burger King in 2008, seven hours a day, five days a week, for six months.  (*Id.* at 168.)  He was fired from Burger King as the result of an altercation with a co-worker, and has not tried to return to work.  (*Id.* at 50.)  Reyes suffers from major depressive disorder ("MDD"), bipolar disorder, and PTSD.  (*Id.* at 12.)  He alleges that his illnesses began after the sudden death of his spouse on March 25, 2010.  (*Id.* at 237.)  Reyes lives alone and claims that he is able to handle his own finances.  (*Id.* at 176-78.)  He shops in stores, takes public transportation, prepares his own meals, cleans his apartment, talks to people on the telephone, watches television, and attends church four times a week.  (*Id.* at 54, 176-78.)

When asked by ALJ Grossman whether or not he has any issues with his memory or difficulty concentrating, Reyes replied, "sometimes, yes," and elaborated that if he watched a movie he would not be able to remember the beginning of it.  (*Id.* at 58.) He also claimed he has trouble remembering things "some of the times."  (*Id.* at 181.)  In response to a question prompting him to explain what he was able to do before his illnesses, Reyes replied, "sleep, think clearly, concentrate."  (*Id.* at 174.)  He takes prescribed medications; Diphenhydramine for insomnia and Remeron for depression.  (*Id.* at 169.)  He testified that on occasion he has asked to increase the dosage of his depression medication.  (*Id.* at 52.)

Reyes alleges that stress or changes in his schedule affect his ability to "think, focus, concentrate, and remember."  (*Id.* at 181.)  He further alleges that his panic attacks are triggered by remembering what happened when his wife went to the hospital.  (*Id.*)  During those attacks

he "hear[s] voices [and feels] anger an[d] resentment." (*Id.*) He claims the panic attacks occur

daily, when he wakes up and when he goes to bed. (*Id.*) During an attack he is unable to do

certain activities, such as shopping. (*Id.*) When the symptoms lessen it takes him about an hour

to "concentrate on [his] emotions" to help him calm down. (*Id.*)

### 2. Relevant Medical Evidence

#### a. Carl J. St. Preux, M.D. – Treating Physician

Dr. Carl J. St. Preux was Reyes's treating physician at La Casa de Salud, and provided a

medical source statement on March 18, 2013. Dr. St. Preux diagnosed Reyes with PTSD and

bipolar disorder, and assigned Reyes a Global Assessment of Functioning ("GAF") score of 55.[1]

(Tr. at 433.) According to Dr. St. Preux, Reyes's symptoms include sleep disturbance, mood

disturbance, "emotional lability,"[2] delusions or hallucinations, recurrent panic attacks,

psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, difficulty

thinking or concentrating, decreased energy, and persistent irrational fears. (*Id.*) Dr. St. Preux

indicated that Reyes's "impairments [are] reasonably consistent with the symptoms and

functional limitations described in the evaluation." (*Id.* at 434.) He determined that Reyes does

not have a reduced IQ, and anticipated that Reyes would miss work about once a month. (*Id.*)

He also concluded that Reyes has "marked loss" in his ability to work on a regular and

continuing basis, and can sustain performance only up to one-third of an eight-hour workday.

(*Id.*)

---

[1] GAF is a rating scale that assesses an individual's capacity to function in his or her daily life. A GAF of 55 represents a moderate impairment in functioning. *See* American Psychiatric Assoc., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 2000). The fifth edition of this manual, however, no longer uses the GAF score. *Mainella v Colvin*, No. 13–CV-2453 (JG), 2014 WL 183957, at *5 (E.D.N.Y. Jan, 14, 2014). As of now, an ALJ must treat a GAF score as opinion evidence and must look to the "underlying bases for those numbers and analyze them in the context of the evidence as a whole." (*Id.*)

[2] Emotional lability is a condition of excessive emotional reactions and frequent mood changes. *See Emotional Lability*, MOSBY'S MEDICAL DICTIONARY (9th ed. 2009).

Dr. St. Preux checked "no" to indicate that Reyes's "ability to understand, remember, and carry out instructions" did not affect his impairment. (*Id.* at 435.) The form instructed Dr. St. Preux to move on to the next question if he had checked "no," but he proceeded to describe the degree of Reyes's limitations in all work-related mental activities. (*Id.*) He checked off "marked loss" for all work-related mental activities, such as carrying out very short simple instructions, remembering locations and work-like procedures, dealing with stress of semi-skilled and skilled work, and completing a normal workday or workweek without interruptions from psychologically-based symptoms. (*Id.*)

Dr. St. Preux checked "no" to indicate that Reyes's ability to respond appropriately to supervision, co-workers, and work pressure in work-setting is not affected by his impairments (*Id.*) He did not follow the form's instructions to move to the next question and again described the degree of Reyes's limitations. He listed "marked loss" in all work-related mental activities, including interacting appropriately with the public, maintaining socially appropriate behavior, and getting along with co-workers and peers without unduly distracting them or exciting behavior extremes. (*Id.* at 436.)

Dr. St. Preux described Reyes's functional limitations in a work setting or elsewhere as "extreme," including restriction on activities of daily living, difficulty maintaining social functioning, deficiencies of concentration, and pace resulting in failure to complete tasks in a timely manner. (*Id.*) He also concluded, however, that Reyes has the ability to manage his own funds. (*Id.* at 437.) He noted that Reyes's condition existed and persisted with the restrictions as outlined in the medical source statement he provided, but he did not fill out the date on which the symptoms began. (*Id.*)

### b. Edward Hoffman, M.D. – Consultative Psychiatric Evaluation

Dr. Edward Hoffman performed a one-time consultative psychiatric examination of Reyes on September 9, 2011, and provided a medical source statement. During his one-time consultation, he diagnosed Reyes with major depressive episode. (Tr. at 396.) He noted that Reyes had travelled to the appointment alone by subway approximately ten miles. (*Id*. at 394.) Dr. Hoffman reported that Reyes's overall presentation during the examination was adequate and he was cooperative. (*Id*. at 395.) He concluded that Reyes has basic self-care and socialization skills, but noted that he does not take part in any structured leisure activities. (*Id*. at 396.) He reported that Reyes sleeps poorly, has friends, likes to watch television, and feels depressed at times. Reyes stated to Dr. Hoffman that his depression is a result of his wife's death. (*Id*. at 394.)

Dr. Hoffman also found that Reyes has impaired remote memory skills because Reyes could not recall any objects after five minutes. (*Id*. at 395.) He observed that Reyes can perform simple repetitive tasks, relate adequately to others in structured situations, can learn new rote tasks, and follow a routine or schedule independently. (*Id*. at 396.) He opined that Reyes does not show the ability to manage his funds independently. He also noted that Reyes's brother was hospitalized psychiatrically. (*Id*. at 394.) He recommended that Reyes receive outpatient treatment for his depression and vocational counseling. (*Id*. at 386.) Dr. Hoffman concluded that Reyes's allegations of psychiatric problems are supported by the examination and his history of outpatient mental health treatments. (*Id*. at 396.)

### c. Lucy Kim PSY. D. – Consultative Psychiatric Evaluation

Dr. Lucy Kim performed a post-hearing psychiatric evaluation of Reyes on June 15, 2013. She reported that Reyes has experienced depressive symptoms since 2010, such as crying

spells, hopelessness, loss of usual interest, loss of energy, and concentration difficulties. (Tr. at 440.) She also recorded manic symptoms including pressured speech, distractibility, psychomotor agitation, decreased need for sleep, and flight of ideas. (*Id.* at 441.) The evaluation indicated that Reyes has visual and auditory hallucinations. Under his family history she also noted that his biological brother was diagnosed with schizophrenia. (*Id.*)

Dr. Kim stated that Reyes appeared his stated age, dressed appropriately, and had normal posture and eye contact. (*Id.*) She noted, however, that his personal hygiene and grooming were poor and his behavior was lethargic. (*Id.*) She also reported that he was monotone and his speech was mumbled. (*Id.*) She observed that Reyes had difficulty expressing himself at times, but was responsive. (*Id.*)

Dr. Kim found Reyes's thought process coherent and goal-oriented with no evidence of hallucinations or delusions in the evaluation setting. (*Id.* at 442.) She concluded that his attention, concentration, and memory skills are mildly impaired and he has below average cognitive functioning. (*Id.*) She reported that Reyes is able to dress himself, cook, clean, bathe, and manage his own money. (*Id.*) She also noted that he "spends his day watching TV and taking naps." (*Id.*)

Dr. Kim found no limitation in his ability to perform simple tasks independently. She also found no evidence that there are limitations on his ability to maintain a regular schedule, perform complex tasks independently, make appropriate decisions, or deal with stress. (*Id.* at 442-3.) She concluded that Reyes has a moderate limitation in his ability to "adequately relate with others," and to follow and understand simple instructions, to learn new tasks, and to retain attention and concentration. (*Id.* at 443.)

### d.   Jose Corvalan, M.D. – Orthopedic Examination

Dr. Jose Corvalan completed an orthopedic examination of Reyes on September 21, 2011.  He reported that Reyes has a history of a herniated disk of the lower back, arthritis, a lack of concentration, and memory loss.  (Tr. at 412.)  Reyes reported that he was in an accident while driving a bus, which resulted in a sharp pain in his lower back that is localized and constant.  He has no history of an MRI or specific treatment, but claims that he could not seek medical attention because he had no insurance.  He reported that his pain is aggravated by sitting, standing for long periods of time, walking long distances, going up and down stairs, and by bending and lifting any heavy objects.  (*Id.* at 412.)  With respect to daily living, Reyes claims he cooks three times a week, cleans once a week, does laundry three times a week, and shops two times a month.  (*Id.* at 413.)  Reyes also showers himself every night, dresses by himself every day, watches television, listens to the radio, and reads. (*Id.* at 413.)  Dr. Corvalan found no evidence to suggest that Reyes has any significant physical limitations based on the examination.  An x-ray of Reyes's lumbosacral spine indicated no significant "bony abnormality."  (*Id.* at 416.)

### e.   Third Avenue Radiology & Imaging P.C.

Reyes visited Third Avenue Radiology & Imaging P.C. on March 5, 2013.  An ultrasound of his testes revealed a mass at the bottom of his right testicle.  (Tr. at 431.)

### f.   Norma Tejada - Entitlement Specialist at FEGS We Care

Norma Tejada is an entitlement specialist for the not-for-profit social agency FEGS We Care.  (Tr. at 172.)  She completed a disability report that assessed Reyes's symptoms and limitations.  She concluded that Reyes suffers from depression, which causes him to experience symptoms including intense sadness, crying spells, and lack of interest and appetite.  (*Id.*)  Reyes reported that he experiences hopelessness, anger, and resentment as a result of the sudden death

8

of his wife.  He described auditory hallucinations where he can hear his wife calling his name and saying, "I'm back."  (*Id.*)  He also reported that he has difficulty remembering, concentrating, and paying attention, and has racing thoughts and disorganized thinking.  (*Id.*)  Reyes also "avoids going outside during rush hours because it causes him anxiety."  During the interview, Tejada reported that Reyes appeared distant and had poor eye contact.  She often had to re-repeat and re-word questions in order for him to answer.  (*Id.*)

### g.  FEGs We Care Records

The record contains a biopsychosocial examination of Reyes at Bronx Lebanon Hospital conducted by FEGS We Care.  Reyes was referred because of his adjustment disorder.[3]  (Tr. at 242.)  The records indicate his symptoms include depressed mood, insomnia, and crying.  (*Id.* at 243.)  He appeared well-groomed, logical, and cooperative, but was depressed during the examination.  (*Id.*)

The examination assessed Reyes's functional impairments and indicated that his ability to follow rules, maintain attention, and adapt to change and stressful situations is moderate.  (*Id.* at 244.)  He has a normal ability to deal with supervisors and the public with only a mild problem with co-workers.  (*Id.*)  Reyes was assigned a GAF score of 70[4] and the report concluded that he was temporarily unable to work.  (*Id.* at 245.)  The report reflected that Reyes feels depressed, hopeless, tired, and has trouble concentrating on more than half the days in a week.  (*Id.* at 255.)

Reyes was diagnosed with extreme bereavement and severe depression with psychotic features.  (*Id.*)  He appeared to be in a "severely depressed mood" at the time of his examination,

---

[3] Adjustment disorder is a temporary mental disorder "of varying severity that occurs as an acute reaction to overwhelming stress."  Symptoms of this disorder include anxiety, withdrawal, depression, impulsive outbursts, crying spells, and loss of appetite. If symptoms last for more than six months it is considered persistent. *See Adjustment Disorder,* MOSBY'S MEDICAL DICTIONARY (2009), http://medical dictionary.thefreedictionary.com/adjustment+disorder (last visited on July 21, 2016).

[4] A GAF score of 70 demonstrates a mild limitation in daily living. *See* American Psychiatric Assoc., Diagnostic and Statistical MANUAL of MENTAL DISORDERS (4th ed. 2000).

and explained that he is mourning the loss of his wife of sixteen years. (*Id.* at 257.) Notes on the report indicated that Reyes appeared listless during the examination, and that his eyes were glazed over and sunken as if he cries on a regular basis. Reyes reported issues with sleeping, concentration, and hearing random voices. The report also suggested that Reyes might benefit from additional psychotherapy. (*Id.* at 257.)

### h. La Casa de Salud Records

Reyes often visited La Casa de Salud, a healthcare center that accepts patients regardless of their ability to pay or insurance status. The record contains numerous treatment notes and several medical source statements from healthcare providers at the clinic, including Dr. Vando, Dr. Fruitman, Dr. Lubrano, as well as Reyes's treating physician, Dr. St. Preux. The records from 2010 to 2013 indicate consistent diagnoses, treatment, and symptoms from the various medical doctors Reyes visited.

During an appointment On October 18, 2010, Dr. Vando diagnosed Reyes with adjustment disorder and mood disorder, and found Reyes to be temporarily unemployable for approximately nine months. (Tr. at 270.) On January 15, 2011, Dr. Fruitman also found Reyes temporarily unemployable and reported symptoms including "sad mood, severe anxiety, and insomnia." (*Id.* at 260-1.) On May 24, 2011, Dr. Lubrano reported that Reyes hears voices, and experiences anger and resentment. (*Id.* at 261-2.) He determined that Reyes was unable to work for at least twelve months and might be eligible for disability benefits. (*Id.*) On February 14, 2013, Reyes had a follow-up visit with Dr. Lubrano, who described a continuation of Reyes's initial symptoms including anxiety, depressive mood, fearful and compulsive thoughts, difficulty sleeping and racing thoughts. Reyes, however, denied having difficulty concentrating. (*Id.* at 452.)

10

On March 8, 2013, Dr. St. Preux reported similar symptoms as Dr. Lubrano, including "decreased need for sleep, depressed mood, difficulty concentrating, fatigue, hallucination and paranoia." (*Id.* at 449.)   On September 30, 2013, Dr. St. Preux recorded that Reyes was "anxious and fearful, [experienced] excessive worry, [had a] decreased need for sleep, depressed mood, difficulty concentrating, fatigue, guilt and paranoia." (*Id.* at 454.)

### 3.  The ALJ's Findings

On March 13, 2014, ALJ Grossman issued a decision finding that Reyes was not disabled within the meaning of the Social Security Act, and had not been disabled since July, 19, 2011, the date that the application was filed.  20 C.F.R. § 416.920(g).  Following the five-step sequential analysis, the ALJ found at step one that Reyes has not engaged in substantial gainful activity since July 19, 2011, the application date.  (Tr. at 12.)  At step two, the ALJ concluded that Reyes has the following severe impairments: MDD, bipolar disorder, and PTSD.  (*Id.* at 12.)

Although the ALJ considered Reyes's impairments severe, at step three he found that they did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R Part 404 subpart P, Appendix 1.  (*Id.*)  In making this finding, the ALJ first considered whether the "paragraph B" criteria had been satisfied.  Paragraph B requires at least two of the following: "marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation each of extended duration." (*Id.*)

ALJ Grossman determined that the record does not reflect any more than a mild restriction of activities of daily living because Reyes "alleged no problem with his memory," and is able to perform activities without "direct supervision, in a suitable manner, on a consistent, useful, routine basis, and without undue interruptions or distractions." (*Id.* at 13.)  To support his

conclusion, the ALJ relied on Reyes's ability to "attend to personal care needs, watch TV and movies, read books and magazines, clean the house, iron clothes, do the laundry, wash dishes, prepare and cook meals, and use public transportation." (*Id*. at 12.) The ALJ also noted that Reyes had admitted he shops, goes to medical appointments, attends church four times a week, and speaks to family members regularly. (*Id*. at 17.) He determined that these constituted no more than moderate limitations in social functioning. (*Id*.) In addition, the ALJ asserted that Reyes "stated that he has no trouble understanding and following instructions, getting along with authority figures, and getting along with others." (*Id*. at 16.)

The ALJ acknowledged that Reyes lost one job in connection with an altercation with a co-worker and that two of the consultative examiners indicated that he may have some moderate problems in work settings. The ALJ, however, did not find that evidence compelling when weighed against the totality of the record. (*Id*. at 13.) He also determined that Reyes has only moderate limitations with concentration, persistence, or pace because he can understand and follow instructions, gets along with authority figures and others, and is able to count change, pay his bills, and handle a savings account. (*Id*.) The ALJ concluded that there is no evidence that Reyes has experienced any episodes of decompensation for an extended duration. (*Id*.) Having found that paragraph B criteria was not met, ALJ Grossman also considered whether any "paragraph C" criteria were satisfied and concluded that the "evidence failed to suggest such." (*Id*. at 14.)

At step four, ALJ Grossman found that Reyes retained the residual functional capacity ("RFC") to perform work limited to simple task/instruction jobs, "with at most, occasional contact with supervisors, co-workers and the public." (*Id*.) Although ALJ Grossman determined that Reyes's mental impairments could reasonably be expected to cause the symptoms Reyes

alleged, the ALJ did not find Reyes's allegations regarding the "intensity, persistence and limiting effects of these symptoms [] credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*) The ALJ claimed that "the record for the period at issue [was] sparse," and found that the objective evidence available in the record did not support Reyes's allegations of his symptoms. (*Id.* at 15.)

The ALJ cited two factors that weighed against considering Reyes's subjective testimony as support for finding a disability. First, the ALJ found that Reyes's alleged limited daily activities could not be objectively verified with any reasonable degree of certainty. Secondly, the ALJ determined that "it [was] difficult to attribute that degree of limitation" to Reyes's medical condition, "as opposed to other reasons" in light of the "relatively weak" medical evidence. (*Id.* at 16-17.) The ALJ concluded that Reyes's reported limited daily activities were "outweighed by other factors." (*Id.* at 17.)

The ALJ gave Reyes's treating physician, Dr. St. Preux, little weight, finding that his opinion was internally inconsistent and contradicted the totality of evidence in the record. (*Id.*) The ALJ gave Dr. Kim's opinion some weight, but concluded that her determination that Reyes has a moderate limitation in social functioning was not supported by evidence in the record. (*Id.* at 16.) The ALJ relied heavily on Dr. Hoffman's one-time consultative examination because he found Dr. Hoffman's opinion consistent with his own assessment of Reyes's RFC and the medical record overall. (*Id.* at 18.) The ALJ also referenced Dr. Hoffman's familiarity with the disability process as justification for assigning his opinion great weight. (*Id.*) The ALJ gave little weight to Tejada, finding that she was not medically trained to assess symptoms and functional limitations with accuracy. As with Dr. St. Preux, the ALJ found that Tejada's statements were inconsistent with the totality of opinions by medical doctors in the record. (*Id.*)

13

The ALJ assigned some weight to the FEGS WE Care Records but noted that they were "somewhat not current." (*Id.*) In sum, the ALJ found that Reyes "retains the capacity to work" based on the weight of the evidence. (*Id.* at 19.)

After concluding that Reyes has no past relevant work, at step five, the ALJ determined that work in the national economy exists that Reyes can perform. The ALJ indicated that he considered Reyes's age at the date application was filed, his education, and his RFC to determine whether jobs in the national economy exist in significant numbers that Reyes can perform. Because he was forty-nine on the date his application was filed, Reyes is considered a "younger individual." Although Reyes has a "limited education," he can speak English. (*Id.*) The ALJ determined that Reyes's ability to perform work at all exertional levels has been "compromised" by nonexertional limitations. He concluded, however, that those limitations have "little or no effect on the occupational base of unskilled work at all exertional levels." (*Id.*) The ALJ asserted that Reyes could meet the basic mental demands of "competitive, remunerative, unskilled work," namely, the ability to "understand, carry out and remember simple instructions, to respond appropriately to supervision, co-workers and usual work situations and to deal with changes in a routine work setting" on a sustained basis. (*Id.*) ALJ Grossman concluded that "the evidence does not demonstrate a substantial loss of these abilities." (*Id.* at 20.)

## III.    DISCUSSION

### A.    Standard of Review

Upon judicial review, "[t]he of findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. §§ 405(g), 1383(c)(3). Therefore, a reviewing court does not determine *de novo* whether a claimant is disabled. *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam)

14

(citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *accord Mathews v. Eldridge*, 424 U.S. 319, 339 n.21 (1976) (citing 42 U.S.C. § 405(g)). Rather, the court is limited to "two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) (citing *Johnson*, 817 F.2d at 986); *accord Brault*, 683 F.3d at 447. Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g). If the Commissioner's decision meets both of these requirements, the reviewing court must affirm; if not, the court may modify or reverse the Commissioner's decision, with or without remand. *Id.*

An ALJ's failure to apply the correct legal standard constitutes reversible error, provided that the failure "might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)); *accord Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR"). *See, e.g.*, *Kohler*, 546 F.3d at 265 (regulation); *Schaal v. Callahan*, 933 F. Supp. 85, 93 (D. Conn. 1997) (SSR). In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record to explain his reasoning. *Crysler v. Astrue*, 563 F. Supp. 2d 418, 428 (N.D.N.Y. 2008) (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999)).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault*, 683 F.3d at 447 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).

The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord Brault*, 683 F.3d at 447-48.  The substantial evidence standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i).  The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which it is based." 42 U.S.C. §§ 405(b)(1).  While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler v. Astrue*, 546 F.3d 260, 269 (2d Cir. 2008) (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01 Civ. 1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded evidence typically requires remand).  Eschewing rote analysis and conclusory explanations, the ALJ must discuss the "the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the

determination is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

## B.    Determination of Disability

### 1.    Evaluation of Disability Claims

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505, 416.905. A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505, 416.905.

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry: (1) determine whether the claimant is currently engaged in any substantial gainful activity; (2) if not, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to do basic work activities; (3) if so, determine whether the impairment is one of those listed in Appendix 1 of the regulations – if it is, the Commissioner will presume the claimant to be disabled; (4) if not, determine whether the claimant possesses the RFC to perform his past work despite the disability; and (5) if not, determine whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520; *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F.

17

Supp. 2d 24, 29 (S.D.N.Y. 1999). While the claimant bears the burden of proving disability at the first four steps, the burden shifts to the Commissioner at step five to prove that the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

The ALJ may find a claimant to be disabled at either step three or step five of the Evaluation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step three, the ALJ will find that a disability exists if the claimant proves that his or her severe impairment meets or medically equals one of the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant fails to prove this, however, then the ALJ will complete the remaining steps of the Evaluation. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5), 416.920(e), 416.945(a)(5).

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a), 416.945(a); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *see also* S.S.R. 96-9P (clarifying that a claimant's RFC is her maximum ability to perform full-time work on a regular and continuing basis). The ALJ's assessment of a claimant's RFC must be based on "all relevant medical and other evidence," including objective medical evidence, such as x-rays and MRIs; the opinions of treating and consultative physicians; and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1545(a)(3)); *see also* 20 C.F.R. §§ 404.1512(b), 404.1528, 404.1529(a), 404.1545(b).

In evaluating the claimant's alleged symptoms and functional limitations for the purposes of steps two, three, and four, the ALJ must follow a two-step process, first determining whether the claimant has a "medically determinable impairment that could reasonably be expected to produce [her alleged] symptoms." 20 C.F.R. §§ 404.1529(b), 416.929(b); *Genier*, 606 F.3d at

49. An ALJ should not consider whether the severity of an individual's alleged symptoms is supported by objective medical evidence. Social Security Ruling ("SSR") 16-3P, 2016 WL 1119029, at *3. Second, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c); see also 20 C.F.R. § 416.929(c); *Genier*, 606 F.3d at 49. The ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record. SSR 16-3P, 2016 WL 1119029, at *4-6. The evaluation of a claimant's subjective symptoms is not an evaluation of that person's character. *Id.*, at *1.

In making the determination of whether there is any other work the claimant can perform, the Commissioner has the burden of showing that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

### 2.   The Treating Physician Rule

The SSA regulations require the Commissioner to evaluate every medical opinion received. *See* 20 C.F.R. § 404.1527(c); *see also Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). The opinion of a claimant's treating physician is generally given more weight than the opinion of a consultative or non-examining physician because the treating physician is likely "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (discussing the "treating physician rule of deference"). A treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015) ("SSA regulations provide a very specific process for evaluating a treating physician's opinion and instruct ALJs to give such opinions 'controlling weight' in all but a limited range of circumstances.").

If the treating physician's opinion is not given controlling weight, the Commissioner must nevertheless determine what weight to give it by considering: (1) the length, nature, and frequency of the relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) the specialization of the physician; and (5) any other relevant factors brought to the attention of the ALJ that support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)–(ii); *Schisler,* 3 F.3d at 567-69.  The Commissioner may rely on the opinions of other physicians, even non-examining ones, but the same factors must be weighed.  20 C.F.R. § 416.927(e).

The ALJ is required to explain the weight ultimately given to the opinion of a treating physician.  See 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").  Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.  *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 129); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").  Reasons that are conclusory fail the "good reasons" requirement.  *Gunter v. Comm'r of Soc. Sec.*,

361 Fed. Appx. 197, 199-200 (2d Cir. 2012) (finding reversible error where an ALJ failed to explain his determination not to credit the treating physician's opinion). The ALJ is not permitted to arbitrarily substitute his own judgment of the medical proof for the treating physician's opinion. *Balsamo*, 142 F.3d at 81.

Furthermore, an ALJ "cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record," especially where the claimant's hearing testimony suggests that the ALJ is missing records from a treating physician. *Burgess*, 537 F.3d at 129 (quoting *Rosa*, 168 F.3d at 79); *Rosado v. Barnhart*, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003) ("[A] proper application of the treating physician rule mandates that the ALJ assure that the claimant's medical record is comprehensive and complete."). Similarly, "if an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Hartnet v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998), *accord Rosa*, 168 F.3d at 79.

Finally, the ALJ must give advance notice to a *pro se* claimant of adverse findings. *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 545 (S.D.N.Y. 2004) (citing *Infante v. Apfel*, No. 97 Civ. 7689 (LMM), 2001 WL 536930, at *6 (S.D.N.Y. May 21, 2001)). This allows the *pro se* claimant to "produce additional medical evidence or call [her] treating physician as a witness." *Brown v. Barnhard*, 02 Civ. 4523 (SHS), 2003 WL 1888727, at *7 (S.D.N.Y. April 15, 2003) (citing *Santiago v. Schweiker*, 548 F. Supp. 481, 486 (S.D.N.Y. 1981)).

## C.   Issues on Appeal

In her motion for judgment on the pleadings, the Commissioner argues that: (1) the decision that plaintiff was not disabled is supported by substantial evidence; (2) the ALJ properly

declined to give controlling weight to Dr. St. Preux's determination; (3) substantial evidence

**supports the commissioner's determination that plaintiff did not have an impairment that met or**

medically equaled a "listing;" (4) substantial evidence supports the Commissioner's

determination concerning the plaintiff's RFC; and (5) the arguments Reyes raised before the

Appeals Council lack merit.  (Def. Mem. at 10, 13, 15, 18, 21.)

     Although Reyes did not submit papers in opposition, an unopposed motion for judgment

on the pleadings is not a default; rather the court is required to examine the record as a whole to

determine whether he has stated a plausible claim for relief.  *Rivera v. Comm'r of Soc. Sec.*, 2015

U.S. Dist. LEXIS 147454, *26 (S.D.N.Y. Oct. 30, 2015) (citing *Maggette v. Dalsheim*, 709 F.2d

800, 802 (2d Cir. 1983)).  Accordingly, having considered the record and the Commissioner's

arguments in favor of dismissal, the Court finds three areas requiring remand to the

Commissioner for further development of the record.

     **1.**     **The ALJ failed to Apply the Correct Legal Standards**

         **a.**     **The ALJ Failed to Assign Proper Weight to Reyes's Treating Physician, Dr. St. Preux, and Failed to Further Develop the Record to Address Any Internal Inconsistencies in the Treating Physician's Opinion**

ALJ Grossman relied heavily on Dr. Hoffman's one-time consultative examination but

assigned little weight to Reyes's treating physician Dr. St. Preux.  The ALJ determined that Dr.

St. Preux's opinion was inconsistent internally and with the record overall.  (Tr. at 17.)  He

concluded his discussion of Dr. St. Preux's opinion by stating that he gave it weight "to the

extent it is consistent with [the RFC] indicated herein."  (*Id.*)  The ALJ, however, did not provide

specific reasons for his conclusions regarding Dr. St. Preux's opinion.  Instead, he cited internal

inconsistencies in Dr. St. Preux's opinion to undermine his credibility, such as how Dr. St. Preux

described Reyes's limitations as "marked" and "extreme," but determined that Reyes's GAF

showed moderate impairment, and concluded that he would only miss one day of work a month. (*Id.*)

ALJ Grossman's decision focused on internal inconsistencies as justification for assigning little weight to Reyes's treating physician. During the second hearing, the ALJ stated that if he determined the treating physician's records were "ambiguous, [he] may schedule a second hearing with an ME, and skip the intermediate step." (*Id.* at 60.) Although ALJ Grossman took ten months to reach this decision, he did not schedule a supplemental hearing with a medical expert or attempt to follow up with Reyes's treating physician to resolve the perceived inconsistencies within Dr. St. Preux's opinion. *See Burgess*, 537 F.3d at 129. Most importantly, Dr. St. Preux reported that Reyes's symptoms caused "marked loss" in all work-related mental activities, which supports a finding of a disability at the third step of the sequential analysis. Relevant here are the paragraph "B" criteria which permit a showing of "marked difficulties in maintaining social functioning" and "marked difficulties in maintaining concentration, persistence, or pace" as per se evidence of disability. *See* 20 C.F.R. Part 404 subpart P, Appendix 1. Dr. St. Preux's opinion supports marked difficulties for both criteria. He reported marked loss in carrying out very short simple instructions, remembering locations and work-like procedures, and completing a normal workday or workweek without interruptions from psychologically based symptoms. (Tr. at 435.) He also reported marked loss in interacting appropriately with the public, maintaining socially appropriate behavior, and getting along with co-workers and peers without unduly distracting them or exciting behavior extremes. (*Id.* at 436.) ALJ Grossman failed to meet his affirmative duty to resolve the inconsistencies in Dr. St. Preux's opinion, which is basis for remand. *Hartnet*, 21 F. Supp. 2d at 221, *accord Rosa*, 168 F.3d at 79.

### b.   The ALJ Failed to Properly Evaluate the Intensity, Persistence, and Limiting effects of Reyes's Psychiatric Symptoms

The ALJ concluded that Reyes's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found Reyes's statements regarding the "intensity, persistence, and limiting effects of these symptoms not credible to the extent that they are inconsistent" with his own analysis of Reyes's RFC. (Tr. at 15.) The ALJ cited two factors that weighed against considering Reyes's subjective testimony as strong support for finding a disability:

> First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons in view of relatively weak medical evidence and other factors discussed in this decision.

(*Id.* at 16-17.) The ALJ concluded that Reyes's reported limited daily activities were "outweighed by other factors." (*Id.* at 17.)

Boilerplate language identical to that of ALJ Grossman can be found in *Swanson v. Barnhart*, where the Tenth Circuit remanded the district court's order affirming the ALJ's decision because the ALJ "applied incorrect legal standards in finding [claimant] not credible and failed to articulate his reasoning with sufficient specificity." *Swanson v Barnhart*, 190 Fed. App'x 655, 658 (10th Cir. 2006). The court in *Swanson* found the ALJ's language "troubling" because he created his own standard without identifying any "statute, regulation, ruling, or case law" to substantiate it. *Id.* at 657. The ALJ's decision did not delineate what "other factors" he was referring to when he concluded that medical evidence in the record was "relatively weak." *Id.* at 658. Here, ALJ Grossman used identical conclusory language and similarly failed to define what factors outweighed Reyes's subjective testimony or why he considered the medical record "weak."

To undermine Reyes's reported subjective limitations, ALJ Grossman focused on Reyes's reported daily living activities and the fact that Reyes alleged no problem with his memory, problems understanding and following instructions, or getting along with authority figures and others. (Tr. at 13-16.)  During the hearing before ALJ Grossman, however, Reyes explicitly stated that he sometimes has difficulty with his memory, and that if he watches a movie he is unable to remember what happened at the beginning of it. (*Id.* at 58.)  Reyes also stated that he has trouble remembering things "some of the times[*sic*]" in his adult functional report. (*Id.* at 181.) When Reyes was asked what he was able to do before his illness, he replied "sleep, think clearly, concentrate." (*Id.* at 174.)  Reyes claims that stress and changes in his schedule affect his ability to "think, focus, concentrate, and remember[]" and reported to his entitlement specialist that he "avoid[s] social gatherings or going outside during rush hours because it causes him anxiety." (*Id.* at 181, 172.)  The ALJ was also aware that Reyes was fired from his last job because of an altercation with another employee and has not tried to return to work since. (*Id.* at 50.)

As part of his evaluation of Reyes's nonexertional limitations, ALJ Grossman is not only required to consider his daily activities but also weigh the "precipitating and aggravating factors" of his condition.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Social Security Ruling ("SSR") 85-15 further clarifies proper evaluation of nonexertional limitations, and recognizes that the "reaction to the demands of work (stress) is highly individualized and therefore "the mentally impaired may have difficulty meeting the requirements of even 'low stress' jobs." *See* SSR 85-15.[5]

---

[5] *Available at* https://www.ssa.gov/OP_Home/rulings/di/02/SSR85-15-di-02.html

Reyes stated that he has panic attacks that occur daily and are triggered by remembering what happened when his wife went to the hospital. (Tr. at 181.) He alleged that his ability to function is impaired because he is unable to perform normal activities when he is having an attack and must take about an hour to "concentrate on [his] emotions" to reduce his symptoms. (*Id.*) He also stated that during those attacks he "hear[s] voices [and feels] anger an[d] resentment." (*Id.*) ALJ Grossman did not consider that Reyes's reported daily activities may not be inconsistent with the extent of his limitations because his ability to function is more limited when his depressive and anxious symptoms take full effect.

The ALJ's cursory review of Reyes's limitations, is further demonstrated by a passage in the decision which does not refer to Reyes.

> The claimant is a [*sic*]year-old man who alleged an onset date of disability of April 11, 2012, at which time he was 53 years old. He filed his application for Title II benefits on June 27, 2012. On his date last insured of December, 31, 2017, he will be 59 years old.

(*Id.* at 15.) Reyes filed for supplemental security income on July 19, 2011. (*Id.* at 144.) His birth date is August 14, 1961; therefore, he was forty-nine years old at the time of his application. (*Id.* at 165.) Reyes also alleges that his disability began in March of 2010, after his wife passed away. (*Id.* at 143.) The inaccuracies in the ALJ's decision evidence a superficial review of Reyes's limitations.

ALJ Grossman ignored critical statements made by Reyes regarding his subjective symptoms and did not consider that Reyes's limitations may fluctuate in different settings or when his symptoms take full effect. ALJ Grossman, therefore, failed to properly evaluate the intensity, persistence, and limiting effects of Reyes's psychiatric symptoms, which is cause for remand. 20 C.F.R. § 404.1529(c); see also 20 C.F.R. § 416.929(c); *Genier*, 606 F.3d at 49.

26

### 2. The ALJ's Finding that Reyes is Able to Perform Work is Not Based on Substantial Evidence

### a.    Medical Evidence Supports Reyes's Alleged Mental Impairments

ALJ Grossman determined that the medical evidence failed to substantiate Reyes's alleged mental impairments. (Tr. at 15.)  Considerable evidence in the medical record, however, supports Reyes's subjective symptoms of memory loss, issues with concentrating, and difficulties with social gatherings.  Dr. Hoffman, to whom ALJ Grossman assigned great weight, stated in his evaluation that Reyes has impaired remote memory skills because he could not recall any objects after only five minutes had passed. (*Id.* at 396.)  Dr. Hoffman also reported that Reyes's allegations of psychiatric problems were supported by the examination and his history of outpatient mental health treatments. (*Id.*)

Dr. Kim reported that Reyes's attention, concentration, and memory skills were mildly impaired. (*Id.* at 442.)  She also determined that Reyes has a "moderate limitation for relating adequately with others." (*Id.* at 444.)  Tejada found that Reyes's illness affects his memory, and his ability to complete tasks, concentrate, and understand. (*Id.* at 346.)  Dr. St. Preux, Reyes's treating physician, reported that Reyes has difficulty thinking or concentrating.  He determined that Reyes has "marked loss" in work-related mental activities including carrying out very short, simple instructions and remembering locations and work-like procedures. (*Id.* at 433, 435.)  He also determined that Reyes has marked loss in his ability to interact appropriately with the public, maintain socially appropriate behavior, and get along with co-workers and peers without unduly distracting them or exciting behavior extremes. (*Id.* at 436.)  The ALJ failed to accurately assess all relevant evidence, and thus, his determination was not supported by substantial evidence in the record. *See* 20 C.F.R. § 404.1545(3).

### b.     The ALJ Discounted All Evidence in the Record Related to Reyes's Physical Impairments

Although Reyes's mental impairments appear to be the main source of his limitations, because Reyes is *pro se*, the court is required to examine the record as a whole and consider all plausible claims for relief. *Rivera v. Comm'r of Soc. Sec.*, U.S. Dist. LEXIS 147454 at *26 (citing *Dalsheim*, 709 F.2d at 802.) Here, ALJ Grossman failed to consider Reyes's physical impairments in evaluating his ability to work. Prior to the ALJ's decision, Reyes reported pain in his testicle, back pain because of a slipped disk, and a hernia operation that have given him problems in his pelvic area.  (Tr. at 181.)

At the second hearing, the ALJ asked Reyes if he has had any physical therapy in the past five years.  Reyes stated that he had not received physical therapy or gotten an MRI.  The ALJ responded:

> "As far as I'm concerned, unless you have something else, this is a psychiatric problem, not a physical problem. Do you have something which would change my mind?" Reyes's attorney answered, "No, I don't. Not here." ALJ Grossman replied "Okay. So that – so the answer is psychiatric."

(*Id.* at 44.)  After concluding at the hearing that "the answer is psychiatric," ALJ Grossman failed to consider any evidence of Reyes's physical limitations in the record. Reyes visited Third Avenue Radiology & Imaging P.C. where an ultrasound of his testes revealed a mass at the bottom of his right testicle.  (*Id.* at 431.)  Reyes also visited Dr. Corvalan to complete an orthopedic examination.

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i).  ALJ Grossman ignored all evidence related to Reyes's physical

limitations and therefore failed to properly evaluate those limitations, which is a basis for remand. *See Zabala*, 595 F.3d at 409.

### c.     The ALJ Failed to Properly Evaluate Reyes's Ability to Perform Work

ALJ Grossman's evaluation of Reyes's ability to perform work was conclusory without proper analysis. To determine whether a successful adjustment to other work can be made, the ALJ must consider the claimant's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ stated that Reyes is a "younger individual" with a "limited education" who can speak English. (Tr. at 19.) His evaluation of whether Reyes is able to perform work, however, did not reflect any discussion of those factors.

ALJ Grossman simply concluded that although Reyes's ability to perform work has been "compromised" by nonexertional limitations, those limitations have "little or no effect on the occupational base of unskilled work at all exertional levels." (*Id.*) The ALJ described the basic demands of competitive, remunerative, unskilled work and proclaimed that the evidence does not demonstrate a substantial loss of the ability to understand; to carry out and remember simple instructions; to respond to supervision, co-workers, and "usual work situations;" and to deal with changes in work routine. (*Id.* at 20.) He offered no evidence to demonstrate that Reyes has the capability to perform that type of work or specific examples of work that would fit that category. The Commissioner's burden of showing "there is gainful work in the national economy which the claimant could perform," was therefore not met. *See Balsamo*, 142 F.3d at 80.

### d.     The ALJ failed to obtain a Medical-Vocational Expert

In certain cases, "if a claimant's non-exertional impairments 'significantly limit the range of work permitted by his exertional limitations' . . . the application of the grids is inappropriate"

and a vocational expert is required. *Bapp v. Bowen,* 802 F.2d 601, 605 (2nd Cir. 1986). The following examples of nonexertional limitations may be relevant here: difficulty functioning because you are nervous, anxious, or depressed; difficulty maintaining attention or concentration; and difficulty understanding and remembering detailed instructions. *See* 20 C.F.R. § 404 1569a(c)).

There is extensive evidence in the record that supports the fact that Reyes has difficulty functioning because he is nervous, anxious, or depressed. Dr. Kim reported that since 2010 Reyes has experienced depressive symptoms such as crying spells, hopelessness, loss of usual interest, loss of energy, and concentration difficulties. (Tr. at 440-1.) Reyes is also prescribed medication for his depression and testified that he has asked to increase the dosage for it. (*Id.* at 169, 152.) During Dr. Hoffman's one-time consultation, he diagnosed Reyes with major depressive episode and stated that Reyes feels depressed at times and sleeps poorly. (*Id.* at 396, 394.)

Reyes has also reported symptoms of anxiety. He describes panic attacks that occur daily and are triggered by remembering what happened when his wife went to the hospital. (*Id.* at 181.) He also reported "avoid[ing] going outside during rush hours because it causes him anxiety." (*Id.* at 172.) Dr. St. Preux reported that Reyes has recurrent panic attacks and his symptoms include being anxious and excessively worried. (*Id.* at 433, 454.)

Evidence in the record also strongly suggests that Reyes has difficulty functioning because of his difficulty maintaining attention, concentration, and remembering detailed instructions. Reyes has repeatedly reported difficulty maintaining attention and concentration. (*Id.* at 174, 181.) Dr. St. Preux reported that Reyes has difficulty thinking or concentrating and "marked loss" in carrying out even very short simple instructions. (*Id.* at 433, 435.) Dr. St.

30

Preux also stated that Reyes's work functions are limited because of deficiencies of concentration and pace resulting in failure to complete tasks in a timely manner. (*Id.* at 436.) Dr. Hoffman determined that Reyes has impaired remote memory skills because he could not recall any objects after only five minutes had passed, which clearly suggests he would have difficulty remembering detailed instructions. (*Id.* at 396.) If after further development of the record it is determined that Reyes has non-exertional limitations that significantly limit the range of work he can perform, the ALJ failed at step-five by not providing a vocational expert.

**D.    Remand**

Reyes requests that the Commissioner's decision be reversed, or, in the alternative, remanded for reconsideration. Remand for further administrative proceedings is appropriate "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). ALJ Grossman failed to fully develop the record and resolve the perceived internal inconsistencies of Reyes's treating physicians' opinion, and explicitly relied on one of Reyes's consultative examiners' opinion. The ALJ also ignored substantial evidence in the record related to Reyes's impairments, which leads this Court to recommend this case be remanded to allow the ALJ to reweigh the evidence, developing the record as needed. *Halloran*, 362 F.3d at 32

### IV. CONCLUSION

For the reasons set forth above, I recommend that the Commissioner's motion be **DENIED**. I further recommend that the case be **REMANDED** to the Commissioner for further consideration and development of the administrative record.

Pursuant to Federal Rule of Civil Procedure 72, the Parties shall have fourteen days after being served with a copy of the recommended disposition to file written objections to this Report

and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable William H. Pauley III, 500 Pearl Street, Room 1920, New York, New York 10007, and to chambers of the undersigned, 500 Pearl Street, Room 1970, New York, New York 10007. Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals.  *See Thomas v. Arn,* 746 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

**DATED: September  /  , 2016**
**New York, New York**

Respectfully Submitted,

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

A copy of this Report and Recommendation was mailed to:
**Daniel Reyes**
1711 Lancome Avenue
Apt. 1F
Bronx, NY 10473
PRO SE